1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MAURICE C. MOCK,

            Plaintiff,

   v.

CALIFORNIA DEP'T OF CORRECTIONS
AND REHABILITATION, et al.,

            Defendants.

Case No.  1:15-cv-01104-MJS

**ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS**

**(ECF NO. 4)**

**AMENDED COMPLAINT DUE WITHIN
FOURTEEN (14) DAYS**

I.    **PROCEDURAL HISTORY**

       Plaintiff, a former employee of the California Department of Corrections and Rehabiliation ("CDCR") at Pleasant Valley State Prison ("PVSP") in Coalinga, California, filed this action on June 15, 2015, in the Fresno County Superior Court against CDCR; PVSP; Jeffrey Beard, Secretary of CDCR, in his official capacity; John Keith, Chief Nurse Executive at PVSP, in his official and individual capacities; and Does 1-50 on thirteen causes of action under both state and federal law. Defendants CDCR, PVSP, and Jeffrey Beard removed the case to this Court on July 16, 2015, pursuant to 28 U.S.C. § 1441(a). All appearing parties have consented to the undersigned's jurisdiction.[1] (ECF Nos. 6-7, 8.)

---

[1] Defendant John Keith has not yet appeared in this action.

1   This action is before the Court on Defendants CDCR, PVSP, and Jeffrey Beard's
2   ("the moving Defendants") July 21, 2015, motion to dismiss and motion to strike. (ECF
3   No. 4.) Plaintiff has filed an opposition. (ECF No. 10.) Defendants have filed a reply.
4   (ECF No. 12.) This matter is now fully briefed and ready for disposition.

5   **II.   LEGAL STANDARD**

6   A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency
7   of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the
8   absence of sufficient facts alleged under a cognizable legal theory. Conservation Force
9   v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). In resolving a 12(b)(6) motion, a
10  court's review is generally limited to the operative pleading. Daniels-Hall v. Nat'l Educ.
11  Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

12  To survive a motion to dismiss, a complaint must contain sufficient factual matter,
13  accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal,
14  556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
15  (2007)); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d
16  962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw
17  all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at
18  998. Pro se litigants are entitled to have their pleadings liberally construed and to have
19  any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir.
20  2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658
21  F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

22  **III.   PLAINTIFF'S CLAIMS**

23  Plaintiff's allegations can be summarized as follows:

24  As of June 2014, Plaintiff, a white male, had been employed by CDCR for more
25  than 17 years, most recently as a Supervising Registered Nurse II ("SRN-II") for
26  approximately seven years. Prior to the events at issue here, Plaintiff served as the
27  specialty services director at PVSP, a highly sought-after position and one requiring
28  more responsibilities than standard SRN-II positions. He was also in charge of

1 scheduling of nursing at PVSP and was commended for his performance in that
2 position.

3    Plaintiff had an exemplary employment record at CDCR, and no negative action
4 or substandard performance evaluation had ever been rendered against him. Plaintiff
5 also had a positive working relationship with coworkers and supervisors.

6    **A.    Defendant Keith's Hostile Personal Conduct**

7    In or around May 2011, CDCR and PVSP hired Defendant John Keith, an
8 African-American male, as the supervisor of the nursing unit where Plaintiff worked (the
9 "Nursing Unit").

10    Following his arrival, Keith frequently insulted and demeaned Plaintiff in front of
11 other SRN-IIs in the Nursing Unit. For example, on one occasion Keith said that Plaintiff
12 "dressed like a large woman" and that he would help Plaintiff "find a lab coat that would
13 fit" him. Plaintiff also learned from other employees at PVSP that Keith accused Plaintiff
14 of using racially offensive language or slurs against him and other African-American
15 employees in the Nursing Unit, including the "N" word." One of Plaintiff's co-workers,
16 Lisa Adkins, with whom he previously had a good relationship, became distrustful of
17 Plaintiff as a result of Keith's false accusations and said that she was afraid that Plaintiff
18 was going to start "shooting black folks."

19    **B.    The August 2012 Complaint**

20    On August 20, 2012, a complaint was filed with PVSP by an employee falsely
21 accusing Plaintiff of making inappropriate remarks regarding African-American
22 supervisors at PVSP ("the August 2012 Complaint"). Plaintiff received a "cease and
23 desist" order when he was notified of the August 2012 Complaint.

24    Keith encouraged or directed African-American and other employees, including
25 Ms. Adkins, to make false allegations against Plaintiff and other white employees at
26 PVSP; violated CDCR written policy by forwarding the August 2012 Complaint for
27 disciplinary action without first investigating the allegations internally; and purposefully
28 acted to cause several white employees to be fired.

1    Investigators from the CDCR Office of Internal Affairs interviewed Plaintiff as part

2    of their investigation, and Plaintiff testified that the allegations were false.[2] Plaintiff also

3    told the investigators of Keith's discriminatory and retaliatory conduct as directed at

4    him.[3] On May 13, 2014, the Office of Internal Affairs held that the allegations of the

5    August 2012 Complaint were not sustained.

6    ### C.    Plaintiff's September 2012 Reassignment

7    In or around August or September 2012, Keith reassigned Plaintiff from specialty

8    services director to "A Yard." This was, in practical effect, a demotion due to a reduction

9    in staff supervision and responsibilities.

10    Immediately after reassigning Plaintiff, Keith promoted Ms. Adkins, an African-

11    American employee, to specialty services director, even though she was less qualified

12    and had less relevant experience.

13    ### D.    Failure to Promote Plaintiff

14    On or around July or August 2012, a Supervising Registered Nurse III ("SRN-III")

15    position became available. Plaintiff was the most qualified employee at PVSP for the

16    SRN-III position with the most relevant experience and more seniority than any other

17    SRN-II eligible for the position. The departing SRN-III (Plaintiff's supervisor)

18    recommended to Keith that Plaintiff be promoted to SRN-III upon her departure. Keith,

19    however, promoted Ms. Adkins, who had substantially less experience and was less

20    qualified for the position than Plaintiff.

21    ### E.    Denial of Schedule and Leave Requests

22    Around this same time, the Nursing Unit SRN-II shifts were rotated, and Plaintiff

23    submitted a scheduling request asking for a particular shift before any other SRN-IIs.

24    Under these circumstances, his request should have been granted. Instead, Keith

25    assigned the particular shift to Kahn Solo, an African-American SRN-II.

26

27    _____

[2] Plaintiff does not provide the date of this interview.

28    [3] Since Plaintiff does not specify when this interview took place, it is unclear what discriminatory and retaliatory conduct served as the basis of his complaint to the investigators.

1   Keith also frequently denied, without justification, Plaintiff's requests for leave
2   even though he granted requests for leave by African-American employees with less
3   seniority than Plaintiff.

### F.    Plaintiff's October 2012 EEO Complaint

5   In October 2012, Plaintiff filed a complaint with CDCR's Equal Employment
6   Opportunity office ("EEO") based on Keith's denial of Plaintiff's leave requests, his
7   reassignment of Plaintiff to A Yard, his denial of Plaintiff's promotion to SRN-III, and his
8   insulting and belittling conduct toward Plaintiff based on Plaintiff's race. No official action
9   has been taken on Plaintiff's EEO complaint to his knowledge.

### G.    2012 Surveillance and Discipline Incidents

11  Following Plaintiff's October 2012 EEO Complaint, Keith asked Plaintiff's direct
12  supervisor, Ms. Griffith, to "check up" on Plaintiff while he was working at the Nursing
13  Unit. These requests were frequent and made Ms. Griffith uncomfortable. Each time,
14  Ms. Griffith reported back that Plaintiff was satisfactorily performing his job duties.
15  Despite Ms. Griffith's surveillance reports, Keith instructured Ms. Griffith to take
16  disciplinary actions against Plaintiff. However, Ms. Griffith determined that Plaintiff and
17  his staff were following all proper procedures.[4] Keith did not instruct Ms. Griffith or any
18  other person to conduct this type of surveillance or take disciplinary action against any
19  other employee.

### H.    Keith's June 2014 Public Discriminatory Statements

21  On June 23, 2014, Keith and Plaintiff held interviews for an SRN-II opening at the
22  Nursing Unit. Two of the interviewees were also current employees of the Nursing Unit
23  and were among those who, like Plaintiff, were falsely accused in the August 2012
24  Complaint of making racially offensive statements. Keith told Plaintiff that "there would
25  never be a place" for them "after what they said," allegedly referring to the August 2012
26  Complaint.

27

28  _____

[4] It is unclear from the complaint if any disciplinary action was in fact taken in response to Keith's urging.

1    Afterward, Keith called a meeting with all supervisors on Plaintiff's shift, but
2    specifically excluded Plaintiff from attending. Based on statements by individuals who
3    attended that meeting, Keith discussed the prejudice that African-Americans have
4    suffered because of whites, stating things like "blacks better not let the sun set on their
5    back."

6    **I.      Keith's Incitement of Ms. Lorenz's EEO Complaint**

7    On June 25 or 26, 2014, while Plaintiff was attending CDCR training outside of
8    PVSP, Ashley Lorenz, an office administrator at PVSP supervised by Plaintiff, called
9    Plaintiff to discuss a scheduling matter. Plaintiff disagreed with Ms. Lorenz and
10   instructed her to take a different action. Ms. Lorenz became upset as a result.

11   When Keith learned of Ms. Lorenz's frustration, he personally walked her to the
12   EEO office and influenced her to file an EEO complaint against Plaintiff.

13   **J.      June 2014 Closed-Door Meeting**

14   Plaintiff learned of this incident on June 27, 2014, when he was confronted by
15   Keith and Shirley Franklin, another supervisory employee at PVSP, during a closed-
16   door meeting. Keith specifically excluded Plaintiff's supervisor, Ms. Griffith, from the
17   meeting, contrary to CDCR policy.

18   Keith told Plaintiff that Ms. Lorenz filed an EEO complaint against him because
19   Plaintiff had used an inappropriate tone and intimidated her during their phone
20   converstaion.[5] Keith then accused Plaintiff of being untrustworthy and attempting to
21   undermine Keith's authority, accusations that Plaintiff believes to be based on both the
22   October 2012 EEO Complaint and on Plaintiff's statements to the Internal Affairs
23   Office's investigation into the August 2012 Complaint. Keith also accused Plaintiff of
24   lacking ability to perform as an SRN-II and an SRN-III.

25

26

27          [5] Plaintiff later learned that Ms. Lorenz did not file the EEO complaint because the alleged
     incident did not involve discriminatory conduct and because Ms. Lorenz did not actually intend to make
28   any of the allegations that Keith attempted to influence her to make.

1    When Plaintiff realized that the meeting was intended by Keith to be disciplinary
2 in nature, Plaintiff requested that his supervisor, Ms. Griffith, be present. Keith denied
3 this request without justification.

4    During this meeting, Keith was hostile and threatening toward Plaintiff, which
5 caused Plaintiff to feel intimidated. Plaintiff experienced severe distress and asked that
6 he be excused for a break at least four times. Keith denied these requests and
7 continued his false accusations, threats, and intimidation against Plaintiff.

8    Keith told Plaintiff that he was no longer allowed to work with certain employees,
9 including Ms. Lorenz; to return to his office; or to work in certain capacities at PVSP,
10 including in his then-current capacity as SRN-II or as an acting SRN-III during Ms.
11 Griffith's absences. These restrictions precluded Plaintiff from carrying out virtually any
12 of this then-present duties. Keith did not give Plaintiff any alternative duties, and led
13 Plaintiff to believe that, because of these restrictions, he was constructively terminating
14 Plaintiff's employment.

15    After Plaintiff's fifth repeated request to be excused, Keith finally allowed him to
16 leave. Plaintiff immediately became physically ill and began to vomit and suffered a
17 panic attack as a result of the meeting. Keith's conduct caused Plaintiff to develop an
18 anxiety and panic disorder such that he was directed by his physician not to return to
19 PVSP until his condition improved (elevated blood-pressure and numbness in his
20 extremities).

21    Plaintiff sought relief from Keith's conduct in numerous ways, including through
22 the October 2012 Complaint; by speaking to his direct supervisors, who also, in turn,
23 spoke to the CEO of PVSP; and in September 2012, by reporting to the Employee
24 Relations Officer at PVSP, Heather Sanchez, and the CEO at the time, Anthony
25 Lonigro, and to the EEO counselor at PVSP, Kent Nash, Keith's discriminatory denial of
26 Plaintiff's leave requests and certain employment benefits.

27    Plaintiff claims that Keith intended to establish false grounds upon which to deny
28 Plaintiff an upcoming promotion to SRN-III and intended that these actions inflict

1   significant emotional distress upon Plaintiff in the hopes that Plaintiff would quit. Plaintiff

2   also claims that Keith took these actions for the sole purpose of discriminating against

3   Plaintiff on the basis of his race, and did so in retaliation against Plaintiff for his

4   protected activities in reporting or resisting Keith's discriminatory conduct.

5       Plaintiff brings thirteen causes of action against CDCR, PVSP, Jeffrey Beard,

6   and John Keith: (1) racial harassment in violation of California's Fair Employment and

7   Housing Act, Cal. Gov't Code §§ 12900 *et seq.*, ("FEHA"), (2) racial harassment in

8   violation of public policy, (3) wrongful denial of promotion in violation of FEHA, (4)

9   wrongful denial of promotion in violation of public policy, (5) retaliation in violation of

10  FEHA, (6) retaliation in violation of public policy, (7) racial discrimination in violation of

11  Title VII, (8) retaliation in violation of Title VII, (9) negligent training and supervision, (10)

12  failure to prevent racial harassment, discrimination, and retaliation, (11) intentional

13  infliction of emotional distress, (12) breach of implied and express contract, and (13)

14  breach of implied covenant of good faith and fair dealing.

15      Plaintiff seeks compensatory and punitive damages, attorney's fees, and costs of

16  suit.

17  **IV.   ARGUMENTS**

18      Defendants seek dismissal of the complaint on the following grounds: (1) all of

19  Plaintiff's claims are barred for failure to allege compliance with claim presentation

20  requirements and exhaustion of administrative remedies, (2) claims 2, 4, 6, 9, 11, 12,

21  and 13 against CDCR and PVSP are subject to dismissal with prejudice because the

22  complaint fails to demonstrate the existence of a statutory basis for these claims, (3)

23  claims against individual defendant Beard must be dismissed because Plaintiff has

24  failed to allege direct involvement, and Beard is not liable for retaliation or discrimination

25  under the FEHA or Title VII, (4) claims 1 and 2 do not constitute harassment, (5) claim

26  10 is subject to dismissal because Plaintiff has not alleged actionable discrimination and

27  retaliation, (6) claims 12 and 13 are subject to dismissal because the terms and

28  conditions of public employment are fixed by statute; alternatively, Plaintiff has not

1  alleged the material terms of the contract, and (7) PVPS is not a proper defendant.
2  Additionally, Defendants move to strike Plaintiff's prayer for punitive damages.

3        Plaintiff opposes Defendants' motion. He asserts that he complied with the claim
4  presentation requirements and exhaustion of administrative remedies requirements; that
5  there exists a statutory basis for claims 2, 4, 6, 9, 11, 12, and 13 against CDCR and
6  PVSP; that his claims against Beard are not subject to dismissal; that Defendants'
7  conduct does constitute harassment; that Plaintiff's retaliation claims are sufficiently
8  plead; that Plaintiff's claims against Defendants for failure to prevent discriminatory
9  conduct are not precluded; and that whether PVPS should be included is a matter of
10  fact that should be determined through discovery. Plaintiff also argues that his request
11  for punitive damages should not be stricken. Insofar as the Court finds any error with
12  the claims as asserted, Plaintiff seeks leave to cure by amending the complaint.

13  **V.    ANALYSIS**

14        **A.    Exhaustion of Administrative Remedies**

15              **1.    The California Government Claims Act**

16        The California Government Claims Act, which is also known as the California
17  Tort Claims Act, Cal. Gov't Code §§ 900 et seq. ("CGCA") requires, as a condition
18  precedent to suit for damages against a public entity, the timely presentation of a written
19  claim and the rejection of the claim in whole or in part. See Mangold v. California Pub.
20  Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) (citing Snipes v. City of
21  Bakersfield, 145 Cal. App. 3d 861 (1983)). "Public Entities" include counties, public
22  agencies, and any other public entity or a public employee or any other political
23  subdivision or public corporation of the State. Cal. Gov't Code § 811.2. Timely
24  presentation of claims is not merely a procedural requirement but is an element of the
25  plaintiffs cause of action. Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209 (2007).
26  Accordingly, under California law, failure to allege facts either demonstrating or
27  excusing compliance with the CGCA subjects a complaint to dismissal for failure to
28  state a claim. See California v. Superior Ct. (Bodde), 32 Cal. 4th 1234, 1245 (2004).

1    Relatedly, California Government Code § 950.2 mandates that "a cause of action
2  against a public employee ... for injury resulting from an act or omission in the scope of
3  his employment as a public employee is barred unless a timely claim has been filed
4  against the employing public entity." Fowler v. Howell, 42 Cal. App. 4th 1746, 1750
5  (1996). The California Legislature "included in the [Government] Claims Act what
6  amounts to a requirement that ... one who sues a public employee on the basis of acts
7  or omissions in the scope of the defendant's employment [must] have filed a claim
8  against the public-entity employer pursuant to the procedure for claims against public
9  entities." Briggs v. Lawrence, 230 Cal. App. 3d 605, 612-13 (1991) (citing Cal. Gov't
10  Code §§ 911.2, 945.4, 950.2, 950.6(a)). In federal court, the failure to allege compliance
11  with the Government Claims statutes with respect to a public employee will subject state
12  law claims to dismissal. Karim Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627
13  (9th Cir. 1988).

14    In the complaint, Plaintiff asserts that he submitted a "completed" Government
15  Claim Form on November 5, 2014 "in connection with the matters alleged in the
16  complaint," and the Claims Board formally rejected Plaintiff's claim in its entirety on
17  December 23, 2014. Compl. ¶ 12.. Plaintiff attaches a copy of the formal rejection to the
18  complaint, but does not attach his Claim Form. (See Compl., Ex. A, ECF No. 1 at 34.)
19  Defendants contend that, without a copy of Plaintiff's Claim Form, a determination
20  cannot be made that Plaintiff satisfied statutory requirements concerning the
21  presentation of his claim. See Cal. Gov't Code §§ 910(c)-(e).

22    While this is true, it is unnecessary at the pleading stage. Plaintiff is only required
23  to affirmatively allege compliance with the CGCA. His allegation is presumed true; he
24  does not need to submit proof. See, e.g., Dowell v. Contra Costa County, 928 F. Supp.
25  2d 1137, 1152 (N.D. Cal. 2013) (Plaintiff deemed to have adequately alleged
26  compliance by asserting the date that she filed her claim and the date it was rejected);
27  Nnachi v. City and County of San Francisco, 2015 WL 1743454, at *6 (N.D. Cal. 2015)
28

1  (dismissing state tort claim for failure to plead facts regarding "when he submitted such
2  a claim, what he stated in that claim, and when the City denied it").

3  Defendants also seize on the fact that Plaintiff did not use the word "compliance"
4  in the complaint and instead claimed only that he filed a "completed" Claim Form. This
5  argument is without merit. Compliance can be alleged without using the word
6  "compliance." See, e.g., Moore v. Thomas, 653 F. Supp. 2d 984, 1007 (N.D. Cal. 2009)
7  (Plaintiff claimed to have "exhausted his state tort claims"); Amarkarian v. City of
8  Glendale, 2008 WL 4916315, at *4 (C.D. Cal. 2008) (Plaintiff "submitted a tort claim");
9  Shotwell v. Stevenson, 2006 WL 2434213, at *2 (E.D. Cal. 2006) (Plaintiff "placed his
10 claim in the mail").

11 Accordingly, Defendants' motion to dismiss claims 2, 4, 6, 9, 11, 12 and 13 for
12 failure to allege compliance with the CGCA is denied.

13 **2.   FEHA Administrative Remedies**

14 "In order to bring a civil action under FEHA, the aggrieved person must exhaust
15 the administrative remedies provided by law." Yurik v. Superior Court, 209 Cal. App. 3d
16 1116, 1121 (1989); accord Palmer v. Regents of Univ. of Cal., 107 Cal. App. 4th 899,
17 904 (2003) (under FEHA, exhaustion of administrative remedies is a "jurisdictional
18 prerequisite to resort to the courts"); Martin v. Lockheed Missiles & Space Co., 29 Cal.
19 App. 4th 1718, 1724 (1994). Exhaustion in this context requires filing a written charge
20 with DFEH within one year of the alleged unlawful employment discrimination, and
21 obtaining notice from DFEH of the right to sue. Romano v. Rockwell Int'l, Inc., 14
22 Cal.4th 479, 492 (1996); Rascon v. Diversified Maint. Sys., 2014 WL 1572554, at *5
23 (E.D. Cal. Apr. 17, 2014). The scope of the written administrative charge defines the
24 permissible scope of the subsequent civil action. Yurik, 209 Cal. App. 3d at 1121-23.
25 Allegations in the civil complaint that fall outside the scope of the administrative charge
26 are barred for failure to exhaust.

27 In the complaint, Plaintiff alleges that he filed a complaint of discrimination with
28 the DFEH, which was designated DFEH Matter Number 470973-144443, and that

1   DFEH issued a right-to-sue letter to Plaintiff in connection with these allegations prior to

2   the filing of the complaint. (Compl. ¶ 13, ECF No. 1 at 7.) Defendants move for

3   dismissal because Plaintiff's allegations are vague, making it impossible to determine

4   when he filed his complaint, against whom it was filed, and what unlawful practices he

5   alleged within it. While Plaintiff's burden in claiming compliance is minimal at the

6   pleading stage, he must still provide a factual basis for his claim, including when his

7   complaint was filed, a reference to the allegations contained therein, and the date he

8   received a right-to-sue letter. Since Plaintiff has not provided even these bare facts as

9   to the exhaustion of FEHA administrative remedies for claims 1, 3, 5 and 10,

10  Defendants' motion to dismiss these claims will be granted with leave to amend.

11              **3.     EEOC Administrative Remedies**

12          Title 42, United States Code, § 2000e–5 provides that a plaintiff must file an

13  administrative claim with the Equal Employment Opportunity Commission ("EEOC")

14  against their employer within one hundred and eighty days after the alleged unlawful

15  employment practice occurred. Title VII plaintiffs may file timely charges with the EEOC

16  or an equivalent state agency. B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th

17  Cir. 2002), as amended (Feb. 20, 2002). The DFEH is such an agency. Dornell v. City

18  of San Mateo, 19 F. Supp. 3d 900, 905 (N.D. Cal. 2013). This administrative claim is a

19  prerequisite to the filing of a civil action against that employer under federal law. 42

20  U.S.C. § 2000e–5. Title VII provides that within ninety days after the issuance of a right-

21  to-sue notice, "a civil action may be brought against the respondent." 42 U.S.C. §

22  2000e–5(f)(1).

23          The complaint does not allege that Plaintiff exhausted his administrative

24  remedies as to his Title VII claims. There is no allegation, for example, that he filed a

25  complaint with the EEOC or that he received a right-to-sue letter, and Plaintiff admits

26  that his complaint does not assert compliance with regard to his Title VII administrative

27  remedies. Opp'n at 6. Plaintiff asserts that he can cure the deficiency. Accordingly,

28  Defendants' motion to dismiss claims 7 and 8 will be granted with leave to amend.

1       **B.      Statutory Basis of Claims Against CDCR and PVSP**

2           Under the CGCA, a public entity is not liable for its own conduct or omission to

3   the same extent as a private person or entity. Zelig v. County of Los Angeles, 27 Cal.

4   4th 1112, 1128 (2002). Section 815(a) provides that a "public entity is not liable for an

5   injury, whether such injury arises out of an act or omission of the public entity or a public

6   employee or any other person," "[e]xcept as otherwise provided by statute."

7           "The general rule in California is sovereign immunity. Public entities have liability

8   for injury only when that liability has been assumed by statute." Davis v. City of

9   Pasadena, 42 Cal. App. 4th 701, 704 (1996). Section 815 "abolishes all common law or

10  judicially declared forms of liability for public entities, except for such liability as may be

11  required by the state or federal constitution, e.g., inverse condemnation.... [T]he

12  practical effect of this section is to eliminate any common law governmental liability for

13  damages arising out of torts." Cal. Gov't Code, § 815 Leg. Comm. Comments—Senate.

14          Certain statutes provide expressly for public entity liability in circumstances that

15  are somewhat parallel to the potential liability of private individuals and entities, but the

16  CGCA's intent "is not to expand the rights of plaintiffs in suits against governmental

17  entities, but to confine potential governmental liability to rigidly delineated

18  circumstances." Brown v. Poway Unified School Dist., 4 Cal. 4th 820, 829 (1993); see

19  Becerra v. County of Santa Cruz, 68 Cal. App. 4th 1450, 1457 (1998) ("in absence of

20  some constitutional requirement, public entities may be liable only if a statute declares

21  them to be liable"); Michael J. v. Los Angeles County Dept. of Adoptions, 201 Cal. App.

22  3d 859, 866 (1988) ("Under the Act, governmental tort liability must be based on statute;

23  all common law or judicially declared forms of tort liability, except as may be required by

24  state or federal Constitution, were abolished.")

25          In Cochran v. Herzog Engraving Co., 155 Cal. App. 3d 405, 409 (1984), the

26  California Supreme Court explained the absence of a public entity's common law

27  liability:

28                  ... under the statutory scheme in California, all government

> tort liability must be based on statute.... Government Code section 815, enacted in 1963, abolished all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the federal or state Constitution. Thus, in the absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable. Moreover, under subdivision (b) of section 815, the immunity provisions of the California Tort Claims Act will generally prevail over any liabilities established by statute.... In short, sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.

A court first determines whether a statute "imposes direct liability" on a defendant public entity. <u>Munoz v. City of Union City</u>, 120 Cal. App. 4th 1077, 1111 (2004). "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of [California] Civil Code section 1714." <u>Eastburn v. Regional Fire Protection Authority</u>, 31 Cal.4th 1175, 1183 (2003). "In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable. ... [T]he practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts." <u>Thompson v. City of Lake Elsinore</u>, 18 Cal. App. 4th 49, 62 (1993). In addition, although "public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability." <u>Munoz</u>, 120 Cal. App. 4th at 1113.

Defendants argue that Plaintiff has not identified a statutory basis for liability against CDCR and PVSP in his second claim for harassment; fourth claim for denial of promotion; sixth claim for retaliation; ninth claim for negligent training and supervision; eleventh claim for intentional infliction of emotional distress; twelfth claim for breach of contract; and thirteenth claim for breach of implied covenant of good faith and fair dealing. These claims are asserted as to all of the Defendants, except for claim 9, which is asserted only as to the moving Defendants.

In his opposition, Plaintiff first argues that Defendants may not apply state law to an action in federal court. This argument is flawed. Where, as here, "a federal court [is]

1   exercising supplemental jurisdiction over state law claims[, it]  is bound to apply the law

2   of the forum state to the same extent as if it were exercising its diversity jurisdiction."

3   Bass v. First Pac. Networks, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000). Thus, the Court is

4   bound by the limitations imposed by California Government Code § 815.

5         Plaintiff next argues that the statutory bases of his claims are listed in the

6   complaint – to wit, "This suit is brought to secure the protection, and to redress the

7   deprivation, of rights secured by the United States Constitution, Section 8 of Article 1 of

8   the California Constitution, Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C.

9   §§ 2000e, et seq., as amended […], and California's Fair Employment and Housing Act,

10  codified at Cal. Gov. Code §§ 12900, et seq. […]." Compl. ¶ 1. None of these

11  provisions, however, provide the necessary statutory basis to assert the following state

12  law claims against CDCR and PVSP directly: harassment; denial of promotion;

13  retaliation; negligence, discrimination and retaliation; intentional infliction of emotional

14  distress; breach of contract; and breach of implied covenant of good faith and fair

15  dealing. Plaintiff also asserts that, with respect to claims 2, 4, and 6, the Complaint

16  expressly cites California Government Code §§ 12940 *et seq.* But to the extent Plaintiff

17  brings suit pursuant to FEHA on claims 2, 4, and 6, these claims are subject to

18  dismissal as duplicative of claims 1, 3, and 5, respectively.

19        As revealed here, the upshot of California's statutory scheme of public sector

20  liability is that public entities are not directly liable except to the extent specifically

21  provided by statute. Since Plaintiff has failed to cite any statute, nor is the Court aware

22  of one, which declares CDCR and/or PVSP liable for any of the common law causes of

23  action listed in the complaint, Defendants are correct that they are not directly liable

24  pursuant to California Government Code § 815.

25        However, the very next section, California Government Code § 815.2, provides

26  that an entity may be liable under a theory of respondeat superior for the common law

27  torts committed by an employee to the extent the employee is liable. Martin v. County of

28  San Diego, 650 F. Supp. 2d 1094, 1109 (S.D. Cal. 2009). "Thus, under California law,

1  the [entity's] immunity from suit depends upon whether the individual [employees] are

2  immune." Id. Defendants do not address, let alone analyze, the application of Section

3  815.2 to this case, and the Court declines to conduct research on the immunities

4  available under that section for the multiple state law causes of action that are also

5  asserted against Defendant Keith individually. The public entities may be liable under a

6  respondeat superior theory of vicarious liability. On the other hand, they may not.

7  Absent any analysis by the Defendants of the immunities available under that section,

8  the Court will grant Defendants' motion only as to claim 9 (negligent training and

9  supervision), which is the only claim at issue here that is not also asserted against

10 Defendant Keith individually.

11      **C.**   **Defendant Beard**

12          **1.**   **Individual Liability Under California Government Code § 820.8**

13          Under California Government Code section 820.8, a public employee is immune

14 from liability for his discretionary acts when a plaintiff fails to allege the public

15 employee's personal involvement.[6] See Milton v. Nelson, 527 F.2d 1158, 1159 (9th Cir.

16 1975) (stating that under section 820.8, "supervisory personnel whose personal

17 involvement is not alleged may not be responsible for the acts of their subordinates

18 under California law"); see also Weaver By & Through Weaver v. State, 63 Cal. App.

19 4th 188 (1998) (stating that a Commissioner of CHP officers was not liable because he

20 did not train officers and was not personally involved in the incident in any way). But a

21 public employee can be liable for injury proximately caused by his or her own

22 negligence. Cal. Gov't Code § 820.8.

23          Defendants move for the dismissal of Defendant Beard with prejudice because

24 there are no charging allegations as to him individually and because he cannot be held

25 liable for the alleged wrongs of other public employees. This argument is innapposite

26 _____

27 [6] Section 820.8 provides, in full, "Except as otherwise provided by statute, a public employee is not liable
for an injury caused by the act or omission of another person. Nothing in this section exonerates a public
employee from liability for injury proximately caused by his own negligent or wrongful act or omission."

28 Cal. Gov't Code § 820.8.

1  since Beard is named in his official capacity only, and Section 820.8's restrictions on
2  individual liability do not apply.

3  ## 2.  Individual Liability Under Title VII and FEHA

4  Title VII outlaws discrimination in employment in any business on the basis of
5  race, color, religion, sex or national origin. It also prohibits retaliation against employees
6  who oppose such unlawful discrimination. The Ninth Circuit has made it clear that under
7  Title VII, there is no personal liability for individual employees, including supervisors.
8  The Court specifically stated, "[t]here is no reason to stretch the liability of individual
9  employees beyond the respondeat superior principle intended by Congress." Miller v.
10 Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993). See also Padway v. Palches,
11 665 F.2d 956, 968 (9th Cir. 1982). Similar rules apply for claims brought pursuant to
12 FEHA. Reno v. Baird, 18 Cal.4th 640, 663 (1998); Jones v. Lodge at Torrey Pines
13 Partnership, 42 Cal.4th 1158 (2008).

14 Defendants also move to dismiss claims against Defendant Beard in his
15 individual capacity for retaliation and discrimination under either Title VII or FEHA. As
16 has already been established, though, this Defendant is sued in his official capacity
17 only. Thus, Defendants' arguments are moot.

18 ## 3.  Beard as a "Redundant Defendant"

19 Though Defendants do not raise this point, the Court will dismiss Defendant
20 Beard as a redundant defendant. Beard, who is sued here in his official capacity only, is
21 being sued as an agent of CDCR. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)
22 ("Official-Capacity suits ... generally represent only another way of pleading an action
23 against an entity of which an officer is an agent."). But because the CDCR is also a
24 defendant in this case, Beard is an "improper target" for Plaintiff's claims. The Ninth
25 Circuit has held that when both an official and a government entity are named, and the
26 officer is named only in an official capacity, the court may dismiss the suit against the
27 official as a redundant defendant. Ctr. For Bioethical Reform, Inc. v. Los Angeles
28 County Sheriff Dept., 533 F.3d 780, 799 (9th Cir. 2007).

1    However, official capacity claims are not redundant when they are necessary to

2    foreclose an assertion of Eleventh Amendment immunity on behalf of the government

3    entity. See Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 957 (9th Cir.

4    2002). Moreover, under Ex Parte Young, 209 U.S. 123 (1908), the Eleventh

5    Amendment does not bar actions against state officers in their official capacities when

6    plaintiff is seeking only prospective declaratory or injunctive relief. Los Angeles County

7    Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 2002).

8    Here, since there is no assertion of Eleventh Amendment immunity and since

9    Plaintiff seeks only damages, Defendant Beard will be dismissed from this action with

10   prejudice.

11   **D.   Harassment**

12       **1.   Harassment and "Managerial Duties"**

13   Under the FEHA, harassment and discrimination fall under separate statutory

14   prohibitions. See Cal. Gov. Code §§ 12940(a), (j)(1). To give effect to this distinction,

15   California courts have distinguished harassing acts from discriminatory acts. Reno v.

16   Baird, 18 Cal. 4th 640, 645-47 (1998). "[H]arassment focuses on situations in which the

17   social environment of the workplace becomes intolerable because the harassment

18   (whether verbal, physical, or visual) communicates an offensive message to the

19   harassed employee." Roby v. McKesson Corp., 47 Cal. 4th 686, 706 (2009). Harassing

20   acts constitute "conduct outside the scope of necessary job performance ... presumably

21   engaged in for personal gratification, because of meanness or bigotry, or for other

22   personal motives." Reno, 18 Cal. 4th at 646. "Harassment is not conduct of a type

23   necessary for management of the employer's business or performance of the

24   supervisory employee's job." Id. "[C]ommon[ ] necessary personnel management

25   actions such as hiring and firing ... promotion or demotion, performance evaluations, the

26   provision of support ... do not come within the meaning of harassment." Id. at 646-47

27   (quoting Janken v. GM Hughes Elec., 46 Cal. App. 4th 55, 63-65 (1996)). Discriminatory

28   acts in contrast, "arise out of the performance of necessary personnel management

duties." Id. at 647 (citation omitted). Conduct such as "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations ... may retrospectively be found discriminatory if based on improper motives[.]" Id. (citation omitted).

Despite this distinction, the California Supreme Court has held that "official employment actions" can be considered as part of the conduct supporting a harassment claim when the actions convey an offensive and hostile message to the employee. Roby, 47 Cal. 4th at 708. Roby confirms the holding in Reno and Janken that necessary personnel management actions based on discriminatory motives are typically remedied by FEHA claims for discrimination rather than harassment. Id. at 707. However, Roby recognized that "although discrimination and harassment are separate wrongs, they are sometimes closely interrelated, and even overlapping, particularly with regard to proof." Id. Thus, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." Id. at 709 (citation omitted) ("[S]ome actions that Schoener took with respect to Roby are best characterized as official employment actions rather than hostile social interactions in the workplace, but they may have contributed to the hostile message that Schoener was expressing to Roby in other, more explicit ways."). This secondary effect can also occur when the actions are taken in an "unnecessarily demeaning manner." Id. at 709. Additionally, if the jury determines that the supervisory employment actions were motivated by discrimination, those actions can be used to establish "discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." Id. at 709. As such, "discrimination and harassment claims can overlap as an evidentiary matter." Id. While "FEHA treats

1  discrimination and harassment as distinct categories, ... nothing ... requires that the

2  evidence in a case be dedicated to one or the other claim but never to both." Id. at 710.[7]

3  Defendants move for dismissal of Plaintiff's first and second claims for

4  harassment because the alleged harassment falls within the scope of Defendants'

5  business and management duties. The import of Reno and Roby is that Defendants are

6  correct that "managerial actions" typically form the basis of a discrimination claim under

7  FEHA, not a harassment claim. See Reno, 18 Cal. 4th at 646-47. However, Roby

8  makes clear that official employment actions may be considered when evaluating a

9  harassment claim if the conduct contributes to communicating the hostile and harassing

10 message of the supervisor. Roby, 47 Cal. 4th at 708-09 (examples of such conduct

11 included "shunning of Roby during staff meetings, Schoener's belittling of Roby's job,

12 and Schoener's reprimands of Roby in front of Roby's coworkers").

13 In the complaint, Plaintiff argues that Keith's supervisory actions with respect to

14 Plaintiff had the secondary effect of communicating his hostile message that white

15 employees are not valued. See also Opp'n at 9 ("The conduct alleged in the integral

16 paragraphs of Claim 1 [and Claim 2] included ... making and soliciting false accusations,

17 surveillance, and essentially holding Plaintiff against his will and denying him

18 representation or breaks to recover from illness."). Construing the complaint liberally,

19 the Court concludes that Plaintiff's allegations at least colorably allege that Keith, by

20 excessively monitoring, micromanaging, and criticizing Plaintiff but not his black co-

21 workers, engaged in discriminatory actions based on his race in order to send a

22 message to the work force that white employees were not valued. Accordingly, the

23

24 _____

[7] In Roby, the plaintiff's supervisor made negative comments to plaintiff about her body odor, ostracized

25 her in the office, expressed disapproval when she took rest breaks, and overlooked her when handing out small gifts to other employees. He also disciplined the plaintiff over repeated absences, which were due

26 to a medical condition, and ultimately terminated her employment. Id. at 695. A jury found in plaintiff's favor on her FEHA harassment claim. Id. at 692. The Court of Appeal reversed, reasoning that personnel

27 decisions cannot constitute harassment. Id. at 700. The court thus disregarded every act that could be characterized as a personnel decision. Id. The California Supreme Court reversed, holding that the Court

28 of Appeal had improperly excluded discriminatory personnel decisions in examining plaintiff's harassment claim. Id. at 709.

1  Court rejects Defendants' argument that Keith's actions constituted "business and

2  management duties" that thus have no relevance to Plaintiff's harassment claim.

3                    2.    **Sufficiently "Severe or Pervasive" Actions**

4        Alternatively, Defendants argue that Plaintiff fails to allege specific facts showing

5  racially-related conduct sufficiently severe or pervasive to constitute a hostile work

6  environment.

7        FEHA makes harassment illegal and requires an employer to take immediate and

8  appropriate action against it. Cal. Gov't Code § 12940(j)(1). Since the same legal

9  principles apply to claims under Title VII and FEHA, California courts apply federal

10 decisions interpreting Title VII to analyze FEHA racial harassment claims. See Metover

11 v. Chassman, 504 F.3d 919, 941 (9th Cir. 2007); Jenkins v. MCI Telecomm. Corp., 973

12 F. Supp. 1133, n.5 (C.D. Cal. 1997) ("Because the statutory provisions of Title VII and

13 the FEHA possess identical objectives and public policy considerations, California

14 courts refer to federal decisions when interpreting analogous provisions of the FEHA");

15 see also Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000) (because of similarity

16 between state and federal employment discrimination laws, California courts look to

17 pertinent federal precedent when applying state statutes).

18       A plaintiff may prove racial harassment by demonstrating that an employer has

19 created a hostile or abusive work environment. Meritor Savings Bank v. Vinson, 477

20 U.S. 57, 65-67 (1986). To prevail on a hostile workplace claim premised on race, a

21 plaintiff must show: (1) that he or she was subjected to verbal or physical conduct of a

22 racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was

23 sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and

24 create an abusive work environment. Vasquez v. County of Los Angeles, 349 F.3d 634,

25 642 (9th Cir. 2003); Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 608

26 (1989) (adopting same standard for harassment claims under FEHA). A plaintiff must

27 show that the work environment was abusive from both a subjective and an objective

28 point of view. Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995). Whether the

                                                    21

workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics as the plaintiff. Id. In determining whether a work environment is hostile or abusive, the court must consider all of the circumstances. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). This may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. Although the "mere utterance of an ... epithet which engenders offensive feelings in an employee" does not alter the employee's terms and conditions of employment sufficiently to create a hostile work environment, "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' " such an environment exists. Meritor, 477 U.S. at 65, 67. Neither "simple teasing," "offhand comments," nor "isolated incidents" alone constitute a hostile work environment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Further, "even if a hostile working environment exists, an employer is only liable for failing to remedy harassment of which it knows or should know." Fuller, 47 F.3d at 1527.

In the complaint, Plaintiff does not identify any instance in which Keith made a racially-related comment to Plaintiff directly. Instead, Plaintiff alleges that Keith (1) frequently insulted and demeaned Plaintiff in front of others, including saying that Plaintiff "dressed like a large woman" and that he would help Plaintiff "find a lab coat that would fit" him; (2) accused Plaintiff of using racially offensive language or slurs against Keith and other African-American employees in the Nursing Unit, including the "N" word; (3) encouraged or directed African-American and other employees to make false allegations against Plaintiff and other white employees at PVSP; (4) violated CDCR policy by forwarding the August 2012 Complaint for disciplinary action without first investigating the allegations internally; (5) reassigned Plaintiff to A Yard; (6) failed to promote Plaintiff; (7) denied Plaintiff's schedule and leave requests; (8) directed Plaintiff's supervisor to check up on him; (9) told Plaintiff that "there would never be a place" for certain employees "after what they said," allegedly referring to the August

1  2012 Complaint; (10) said during a meeting from which Plaintiff was excluded that
2  "blacks better not let the sun set on their back"; (11) incited Ms. Lorenz to file an EEO
3  Complaint; and (12) held a closed-door meeting with Plaintiff where Keith was
4  intimidating, accusatory, and threatening. These actions spanned the course of three
5  years.[8]

6      As one court in the Northern District of California has described, "[s]uccessful
7  claims of hostile work environment include harsh and, generally, repetitive verbal
8  abuse." Lockett v. Bayer Healthcare, 2008 WL 624847, at *9 (N.D. Cal. Mar. 3, 2008)
9  (citing Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002) (finding that a Korean
10  plaintiff suffered national origin harassment where the employer verbally and physically
11  abused the plaintiff because of his race); Nichols v. Azteca Rest. Enters., 256 F.3d 864,
12  872-73 (9th Cir. 2001) (finding a hostile work environment where a male employee was
13  called "faggot" and "fucking female whore" by co-workers and supervisors at least once
14  a week and often several times per day); Anderson v. Reno, 190 F.3d 930 (9th Cir.
15  1999) (finding a hostile work environment where a supervisor repeatedly referred to the
16  employee as "office sex goddess," "sexy," and "the good little girl" and where he
17  humiliated the employee in public by drawing a pair of breasts on an easel while the
18  employee was making a presentation and then told the assembled group that "this is
19  your training bra session," and where the employee received vulgar notes and was
20  patted on the buttocks and told she was "putting on weight down there"); Draper v.
21  Coeur Rochester, 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment
22  where plaintiff's supervisor made repeated sexual remarks to her, told her of his sexual
23  fantasies and desire to have sex with her, commented on her physical characteristics,
24  and asked over a loudspeaker if she needed help changing her clothes).

25      Here, Keith's actions fall short of the conduct described in numerous Ninth Circuit
26  opinions where no hostile work environment was found. See Manatt v. Bank of Am., 339

27  _____
   [8] Plaintiff asserts that Keith's actions spanned only two years. Opp'n at 11. In his complaint, though,
28  Plaintiff claims that Keith's improper conduct began shortly after Keith was hired in May 2011, Compl. ¶
   18, and continued through the June 2014 closed-door meeting.

F.3d 792 (9th Cir. 2003); Vasquez, 349 F.3d at 642-44 (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea"); Sanchez v. City of Santa Ana, 936 F.2d 1027, 1031, 1036-37 (9th Cir. 1990) (affirming the district court's decision that no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino)). For instance, in Manatt v. Bank of America, the plaintiff, who was a Chinese American, overheard a number of conversations in which fellow employees used the phrase "China man" and referred to "communists" and "rickshaws." 339 F.3d at 795. She was mocked by her coworkers, who "pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians." Id. She also was told that her pronunciation of the word "Lima" was "ridiculous," was asked to repeat the pronunciation for others to hear, and had her co-workers explain her pronunciation by saying "that's because she's a China woman." Id. at 795-96. While the Ninth Circuit said it was "troubled" by the comments and "racially offensive" acts of the plaintiff's coworkers, given that the incidents occurred only a few times over two and a half years and were directed at her only rarely, it found that the actions of the plaintiff's coworkers generally fell into the "simple teasing" and offhand comments" category of non-actionable discrimination because it was not severe or pervasive enough to alter the conditions of her employment. Id. at 798-99. Accordingly, the Ninth Circuit upheld the district court's grant of summary judgment in favor of the defendant. Id. at 795.

Construing the complaint liberally, the Court agrees with Defendants that the allegations simply do not rise to the level required under the applicable case law. They were less severe than those described in <u>Manatt</u>, and there is no suggestion that, other than the single closed-door meeting in June 2014, Keith's conduct interfered with Plaintiff's work performance. For this reason, Defendants' motion to dismiss will be granted on Plaintiff's harassment claim. Leave to amend will, however, be granted.

### E.   <u>Retaliation</u>

"To succeed on a retaliation claim, [a plaintiff] must first establish a prima facie case [by] demonstrat[ing] (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision." <u>Trent v. Valley Elec. Ass'n, Inc.</u>, 41 F.3d 524, 526 (9th Cir. 1994) (citing <u>EEOC v. Hacienda Hotel</u>, 881 F.2d 1504, 1513-14 (9th Cir. 1989)). The Ninth Circuit has long held that "a plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII," but instead "must only show that she had a 'reasonable belief that the employment practice she protested was prohibited under Title VII." <u>Id.</u> Filing a complaint with an internal human resources department "that a supervisor has violated Title VII may constitute protected activity for which the employer cannot lawfully retaliate." <u>EEOC v. Go Daddy Software, Inc.</u>, 581 F.3d 951, 963 (9th Cir. 2009). As for the causation element, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." <u>Univ. of Texas Southwestern Medical Center v. Nassar</u>, 133 S. Ct. 2517, 2528 (2013). The standard for a retaliation claim under FEHA is substantially similar. <u>See</u> <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1042-43 (2005) (setting forth the same three-element test and holding that an employee's reasonable belief that he or she engaged in protected activity is sufficient).

Defendants argue that Plaintiff fails to state a retaliation claim because the complained-of conduct occurred prior to his engagement in any protected activity. That is, Plaintiff's October 2012 Complaint *followed* Keith's forwarding of the August 2012

1   Complaint without investigation, Plaintiff's reassignment to the A Yard, Keith's failure to

2   promote Plaintiff, and Keith's denial of Plaintiff's schedule and leave requests.

3       Plaintiff rightly counters that, while some of Keith's conduct preceded the October

4   2012 EEO Complaint, much occurred after, including the heightened surveillance,

5   Keith's continued (though unspecified) insulting and intimidating conduct toward

6   Plaintiff, the incitement of Ms. Lorenz's EEO complaint, and the closed-door June 2014

7   meeting where Plaintiff was essentially terminated from his position. However, the

8   timing of these allegedly retaliatory acts requires closer analysis. Other than the

9   heightened surveillance, which Plaintiff alleges occurred "shortly after" the October 2012

10  EEO Complaint, Compl. ¶ 32, the other conduct occurred over one and a half years

11  years later. Compl. ¶¶ 37-44.

12      In Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064-65 (9th Cir 2002), the

13  Ninth Circuit stated the following about proving but-for causation in Title VII retaliation

14  cases:

> We have recognized previously that, in some cases,
> causation can be inferred from timing alone where an
> adverse employment action follows on the heels of protected
> activity. See Passantino v. Johnson & Johnson Consumer
> Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000) (noting that
> causation can be inferred from timing alone); see also Miller
> v. Fairchild Indus., 885 F.2d 498, 505 (9th Cir. 1989) ( prima
> facie case of causation was established when discharges
> occurred forty-two and fifty-nine days after EEOC hearings);
> Yartzoff, 809 F.2d at 1376 (sufficient evidence existed where
> adverse actions occurred less than three months after
> complaint filed, two weeks after charge first investigated, and
> less than two months after investigation ended). But timing
> alone will not show causation in all cases; rather, "in order to
> support an inference of retaliatory motive, the termination
> must have occurred 'fairly soon after the employee's
> protected expression.'" Paluck v. Gooding Rubber Co., 221
> F.3d 1003, 1009-10 (7th Cir. 2000). A nearly 18–month
> lapse between protected activity and an adverse
> employment action is simply too long, by itself, to give rise to
> an inference of causation. See id. (finding that a one-year
> interval between the protected expression and the
> employee's termination, standing alone, is too long to raise
> an inference of discrimination); see also Filipovic v. K & R
> Express Sys., Inc., 176 F.3d 390, 398-99 (7th Cir. 1999)
> (four months too long); Adusumilli v. City of Chicago, 164
> F.3d 353, 363 (7th Cir. 1998) (eight months too long), cert.

denied, 528 U.S. 988 (1999); <u>Davidson v. Midelfort Clinic, Ltd.</u>, 133 F.3d 499, 511 (7th Cir. 1998) (five months too long); <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997) (four months).

Here, although Plaintiff alleges that the increased surveillance occurred "shortly after" the October 2012 EEO Complaint, the complaint lacks any facts concerning the actual timing of the incident. As for the other conduct, which occurred over eighteen months after Plaintiff's protected activity, Plaintiff conclusory allegation that it was in retaliation for Plaintiff's October 2012 EEO Complaint is insufficient to allege but-for causation. Accordingly, Defendants' motion to dismiss will be granted with leave to amend.

### F.   **Failure to Prevent Harassment, Discrimination and Retaliation**

Plaintiff's tenth claim is brought against the moving Defendants for failure to prevent racial harassment, discrimination and retaliation. California Government Code § 12940 provides that "[i]t shall be an unlawful employment practice, unless based upon a bona fide occupational qualification ... [f]or an employer ... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). The California Supreme Court has stated that FEHA "makes it a separate unlawful employment practice" for an employer to violate § 12940(k). <u>State Dept. of Health Services v. Superior Court</u>, 31 Cal. 4th 1026 (Cal. 2003).

However, it is also clear that there can be no violation of 12940(k) absent a finding of actual discrimination or harassment. <u>See, e.g.</u>, <u>Tritchler v. County of Lake</u>, 358 F.3d 1150, 1155 (9th Cir. 2003) (holding the district court did not abuse its discretion in requiring a finding of actual discrimination before a violation of section 12940(k) becomes actionable) (citing <u>Trujillo v. North County Transit Dist.</u>, 63 Cal. App. 4th 280, 283-84 (1998)). "[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen." <u>Trujillo</u>, 63 Cal. App. 4th at 289.

1  In light of the foregoing conclusions that Plaintiff fails to state either a harassment

2  or discrimination claim, his tenth claim for failure to prevent such conduct necessarily

3  fails. It will therefore be dismissed with leave to amend.

4      **G.  Breach of Contract and Breach of Implied Covenant of Good Faith**

5          **and Fair Dealing**

6  No contractual right is vested in a public employee because he occupies a civil

7  service position and because the terms and conditions of such employment are fixed by

8  statute and not by contract. Miller v. State of California, 18 Cal. 3d 808, 814 (1977);

9  Hanford Exec. Mgmt. Emp. Ass'n v. City of Hanford, 2011 WL 5825691, at *8 (E.D. Cal.

10  2011) (rights of employees governed by civil service system derive from statute, not

11  from contract). A claim for breach of an implied covenant "depends upon the existence

12  of a valid contract." Stanley v. Univ. of Southern California, 176 F.3d 1069, 1078 (9th

13  Cir. 1999).

14  Plaintiff's twelfth and thirteenth causes of action are for breach of contract and

15  breach of the implied covenant of good faith and fair dealing. Defendants move for

16  dismissal of these claims on the ground that the terms of public employment are

17  governed entirely by statute. Since Plaintiff fails to substantively oppose this argument,

18  see Opp'n at 13, and since he fails to identify a valid contract in the complaint,

19  Defendants' motion to dismiss will be granted. In his opposition, Plaintiff asserts that he

20  can allege facts establishing a violation of the corresponding statutes that were

21  breached. Accordingly, dismissal is with leave to amend.

22      **H.  CDCR and PVPS as Separate Entities**

23  Plaintiff names CDCR and PVSP as defendants, and asserts that PVSP is "a

24  correctional facility that operates under the CDCR." Compl. ¶ 5. In so doing, he submits

25  that CDCR and PVSP are separate entities for the purposes of this action.

26  Defendants move for dismissal of PVSP, arguing that there is no distinction

27  between it and CDCR. Defendants' conclusory argument is based on reference to

28  California Government Code § 12838, which creates the CDCR, and to California Penal

1   Code sections 5000 and 5003, which establish the CDCR's jurisdiction over certain

2   prisons. PVSP, however, is not one of the institutions enumerated in Section 5003. On

3   this record, the Court cannot conclude that these two entities are identical for purposes

4   of this action. Accordingly, Defendants' motion to dismiss is denied.

5   **I.    Punitive Damages**

6       Lastly, Defendants move to strike Plaintiff's request for punitive damages as

7   improper against a public entity.

8       A motion to strike must involve (1) an insufficient defense, (2) a redundant

9   matter, (3) an immaterial matter, (4) an impertinent matter, or (5) a scandalous matter.

10  Fed. R. Civ. P. 12(f); Yursik v. Inland Crop Dusters Inc., 2011 WL 5592888, at *3 (E.D.

11  Cal. Nov. 16, 2011) (citing Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973-74

12  (9th Cir. 2010)). A defendant may not move to strike factual allegations on the grounds

13  that the allegations are insufficient. Kelley v. Corrections Corp. of America, 750 F. Supp.

14  2d 1132, 1146 (E.D. Cal. 2010) ("The proper medium for challenging the sufficiency of

15  factual allegations in a complaint is through Rule 12(b)(6) not Rule 12(f).") (citing

16  Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1020 (N.D. Cal.

17  2009)). "[W]here a motion is in substance a Rule 12(b)(6) motion, but is incorrectly

18  denominated as a Rule 12(f) motion, a court may convert the improperly designated

19  12(f) motion into a Rule 12(b)(6) motion." Id. (citing Consumer Solutions, 658 F. Supp.

20  2d at 1021). Defendants' motion to strike is in substance a Rule 12(b)(6) motion

21  because it involves the sufficiency of Plaintiff's claim for punitive damages. Accordingly,

22  the Court converts Defendants' motion to strike to a motion to dismiss.

23      Punitive damages may be awarded in a private enforcement action under the

24  FEHA, but they are not available against public entities. See State Personnel Bd. v. Fair

25  Employment & Housing Comm., 39 Cal. 3d 422, 434 (1985); Runyon v. Superior Ct.,

26  187 Cal. App. 3d 878, 881(1986). The Court therefore grants Defendants' motion to

27  dismiss Plaintiff's request for punitive damages as against them.

28  **VI.    CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' motion to dismiss (ECF No. 4) is granted in part as set forth supra. Plaintiff shall file an amended complaint within fourteen (14) days from the date of this order.

IT IS SO ORDERED.

Dated:   September 22, 2015        /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE