UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE C. MOCK, | Case No. 1:15-cv-01104-MJS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al., | **(ECF NO. 24)** |
| Defendants. | **ANSWER DUE WITHIN TWENTY-ONE (21) DAYS** |

## I.  INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, a former employee of the California Department of Corrections and Rehabilitation ("CDCR") at Pleasant Valley State Prison ("PVSP") in Coalinga, California, filed this action on June 15, 2015. He proceeds through counsel on a First Amended Complaint ("FAC") against CDCR; PVSP; and John Keith, Chief Nurse Executive at PVSP, in his official and individual capacities, on twelve causes of action arising under state and federal law.

All parties have consented to the undersigned's jurisdiction for all purposes. (ECF Nos. 6-7, 8, 27.)

Defendants CDCR, PVSP, and Jeffrey Beard, Secretary of CDCR, previously moved to dismiss Plaintiff's complaint. That motion was granted in part on September

23, 2015 (ECF No. 15), and Defendant Beard was dismissed from the action with prejudice. Plaintiff's FAC followed.

In the FAC, Plaintiff brings twelve causes of action against CDCR, PVSP, and Keith alleging: (1) racial harassment in violation of California's Fair Employment and Housing Act, Cal. Gov't Code §§ 12900 *et seq.*, ("FEHA"), (2) racial harassment in violation of public policy, (3) wrongful denial of promotion in violation of FEHA, (4) wrongful denial of promotion in violation of public policy, (5) retaliation in violation of FEHA, (6) retaliation in violation of public policy, (7) racial discrimination in violation of Title VII of the Civil Rights Act of 196, 42 U.S.C. §2000e et seq. ("Title VII"), (8) retaliation in violation of Title VII, (9) negligent training and supervision, (10) failure to prevent racial harassment, discrimination, and retaliation, (11) intentional infliction of emotional distress ("IIED"), and (12) breach of statutory employment terms. Plaintiff seeks compensatory and punitive damages, attorney's fees, and costs of suit.

Defendant Keith has now appeared, and Defendants CDCR, PVSP, and Keith move to dismiss the FAC on several grounds. (ECF No. 23.) Plaintiff opposes the motion. (ECF No. 26.) Defendants have filed a reply. (ECF No. 28.) This matter is now fully briefed and ready for disposition.

## II.   LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d

1   962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw

2   all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at

3   998. Pro se litigants are entitled to have their pleadings liberally construed and to have

4   any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir.

5   2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658

6   F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

7   **III.    PLAINTIFF'S CLAIMS**

8         Plaintiff's allegations can be summarized as follows[1]:

9         As of June 2014, Plaintiff, a white male, had been employed by CDCR for more

10  than 17 years. Prior to the events at issue here, Plaintiff served as the specialty services

11  director at PVSP, a highly sought-after position and one requiring more responsibilities

12  than standard SRN-II positions. He was also in charge of scheduling of nursing at PVSP

13  and was commended for his performance in that position.

14        Plaintiff had an exemplary employment record at CDCR without any negative

15  action or substandard performance evaluation. He had a positive working relationship

16  with coworkers and supervisors.

17        **A.    Keith's Hostile Personal Conduct**

18        In or around May 2011, CDCR and PVSP hired Defendant John Keith, an

19  African-American male, as the supervisor of the nursing unit where Plaintiff worked ("the

20  Nursing Unit").

21        Following his arrival, Keith frequently insulted and demeaned Plaintiff in front of

22  other SRN-IIs in the Nursing Unit and other employees. For example, on one occasion

23  Keith said that Plaintiff "dressed like a large woman" and that he would help Plaintiff

24  "find a lab coat that would fit" him. Plaintiff also learned from other employees at PVSP

25  that Keith accused Plaintiff of using racially offensive language or slurs against African-

26  American employees in the Nursing Unit, including the "N" word." One of Plaintiff's co-

27  _____

[1] The FAC appears to be identical to the original pleading with the addition of certain allegations to
address deficiencies identified in the Court's September 23, 2015, Order granting in part Defendants'

28  motion to dismiss.

3

workers, Lisa Adkins, with whom Plaintiff had had a good relationship, became distrustful of Plaintiff as a result of Keith's false accusations and said that she was afraid Plaintiff was going to start "shooting black folks." Keith also frequently falsely accused Plaintiff in front of his co-workers of incompetence.

Plaintiff found this conduct deeply upsetting and humiliating. By early- or mid-2012, Keith's conduct became so pervasive that it occurred during nearly every interaction with Plaintiff, causing Plaintiff to change his daily routines to avoid Keith. By changing his routine, Plaintiff's ability to work with his coworkers was affected.

**B.    Keith's Incitement of the August 2012 Complaint and the Investigation by the Internal Affairs Office**

On August 20, 2012, a complaint was filed with PVSP by an employee falsely accusing Plaintiff and other white employees of making inappropriate remarks regarding African-American supervisors at PVSP ("the August 2012 Complaint"). Plaintiff received a "cease and desist" order when he was notified of the August 2012 Complaint.

Keith encouraged or directed African-American and other employees, including Ms. Adkins, to make false allegations against Plaintiff and other white employees at PVSP; violated CDCR written policy by forwarding the August 2012 Complaint for disciplinary action without first investigating the allegations internally; and purposefully acted to cause several white employees to be fired.

At various times after August 2012, investigators from the CDCR Office of Internal Affairs ("the IA Office") interviewed Plaintiff as part of their investigation of the August 2012 Complaint, and Plaintiff testified that the allegations were false. Plaintiff also told the investigators of Keith's discriminatory and retaliatory conduct as directed at him. During this time, Keith became aware of Plaintiff's participation in the investigation because Keith's wife, who was employed as the secretary of the CEO of PVSP, handled all of the CEO's emails, including those relating to Plaintiff's testimony to the IA Office. On May 13, 2014, the IA Office held that the allegations of the August 2012 Complaint against Plaintiff and other white employees were not sustained.

4

### C.   Plaintiff's September 2012 Reassignment

In or around August or September 2012, Keith reassigned Plaintiff from specialty services director to "A Yard." This was, in practical effect, a demotion due to a reduction in staff supervision and responsibilities.

Immediately after reassigning Plaintiff, Keith promoted Ms. Adkins, an African-American employee, to specialty services director, even though she was less qualified and had less relevant experience.

### D.   Keith's Failure to Promote Plaintiff

On or around July or August 2012, a Supervising Registered Nurse III ("SRN-III") position became available. Plaintiff was the most qualified employee at PVSP for the SRN-III position with the most relevant experience and more seniority than any other SRN-II eligible for the position. The departing SRN-III (Plaintiff's supervisor) even recommended to Keith that Plaintiff be promoted to SRN-III upon her departure. Keith, however, promoted Ms. Adkins, who had substantially less experience and was less qualified for the position than Plaintiff.

### E.   Keith's Denial of Schedule and Leave Requests

Around this same time, the Nursing Unit SRN-II shifts were rotated, and Plaintiff submitted a scheduling request asking for a particular shift before any other SRN-IIs. Under these circumstances, his request should have been granted. Instead, Keith assigned the particular shift to Kahn Solo, an African-American SRN-II.

Keith also frequently denied, without justification, Plaintiff's requests for leave even though he granted requests for leave by African-American employees with less seniority than Plaintiff.

### F.   Plaintiff's October 2012 EEO Complaint

In October 2012, Plaintiff filed a complaint with CDCR's Equal Employment Opportunity office ("EEO") ("the October 2012 EEO Complaint") based on Keith's denial of Plaintiff's leave requests, his reassignment of Plaintiff to A Yard, his denial of Plaintiff's promotion to SRN-III, and his insulting and belittling conduct toward Plaintiff

based on Plaintiff's race. No official action has yet been taken on Plaintiff's October 2012 EEO Complaint.

### G.   2012 Surveillance and Discipline Incidents

Keith resented Plaintiff because of the October 2012 EEO Complaint. In order to manufacture grounds upon which to terminate Plaintiff, Keith asked Plaintiff's direct supervisor, Ms. Griffith, to "check up" on Plaintiff while he was working at the Nursing Unit. These requests were frequent and made Ms. Griffith uncomfortable. Each time, Ms. Griffith reported back that Plaintiff was satisfactorily performing his job duties. Despite Ms. Griffith's surveillance reports, Keith instructed Ms. Griffith to take disciplinary actions against Plaintiff. However, Ms. Griffith determined that Plaintiff and his staff were following all proper procedures.[2] Keith did not instruct Ms. Griffith or any other person to conduct this type of surveillance or take disciplinary action against any other employee.

### H.   Keith's June 2014 Public Discriminatory Statements

On June 23, 2014, Keith and Plaintiff held interviews for an SRN-II opening at the Nursing Unit. Two of the interviewees were also current employees of the Nursing Unit and were among those who, like Plaintiff, were falsely accused in the August 2012 Complaint of making racially offensive statements. Keith told Plaintiff that "there would never be a place" for them "after what they said," allegedly referring to the August 2012 Complaint.

Afterward, Keith called a meeting with all supervisors on Plaintiff's shift, but specifically excluded Plaintiff. Based on statements by individuals who attended that meeting, Keith discussed the prejudice that African-Americans have suffered because of whites, stating things like "blacks better not let the sun set on their back." Additionally, Keith said that Plaintiff and Ms. Griffith would probably not be working in the Nursing Unit any longer because he had "set them up" for failure based on racial improprieties.

---

[2] It is unclear if any disciplinary action was in fact taken in response to Keith's urging.

1   Keith intended through these statements to help justify his racial discrimination and
2   harassment against white employees and, in particular, Plaintiff.

3   **I.      Keith's Incitement of Ms. Lorenz's EEO Complaint**

4          On June 25 or 26, 2014, while Plaintiff was attending CDCR training outside of
5   PVSP, Ashley Lorenz, an office administrator at PVSP supervised by Plaintiff, called
6   Plaintiff to discuss a scheduling matter. Plaintiff disagreed with Ms. Lorenz and
7   instructed her to take a different action. Ms. Lorenz became upset as a result.

8          When Keith learned of Ms. Lorenz's frustration, he personally walked her to the
9   EEO office and influenced her to file an EEO complaint against Plaintiff.

10   **J.      The June 2014 Closed-Door Meeting**

11          Plaintiff learned of this incident on June 27, 2014, when he was confronted by
12   Keith and Shirley Franklin, another supervisory employee at PVSP but not one of
13   Plaintiff's supervisors, during a closed-door meeting. Keith specifically excluded
14   Plaintiff's direct supervisor, Ms. Griffith, from the meeting, contrary to CDCR policy.

15          Keith told Plaintiff that Ms. Lorenz filed an EEO complaint against him because
16   Plaintiff had used an inappropriate tone and intimidated her during their phone
17   conversation.[3] Keith then accused Plaintiff of being untrustworthy and attempting to
18   undermine Keith's authority, accusations that Plaintiff believes to be based on both the
19   October 2012 EEO Complaint and on Plaintiff's statements to the Internal Affairs
20   Office's investigation into the August 2012 Complaint. Keith also accused Plaintiff of
21   lacking ability to perform as an SRN-II and an SRN-III.

22          When Plaintiff realized that the meeting was intended by Keith to be disciplinary
23   in nature, Plaintiff requested that his supervisor, Ms. Griffith, be present. Keith denied
24   this request without justification.

25          During this meeting, Keith was hostile and threatening toward Plaintiff, which
26   caused Plaintiff to feel intimidated. Plaintiff experienced severe distress and asked that

27   ---
    [3] Plaintiff later learned that Ms. Lorenz did not file the EEO complaint because the alleged incident did not
28   involve discriminatory conduct and because Ms. Lorenz did not actually intend to make any of the
    allegations that Keith attempted to influence her to make.

1    he be excused for a break at least four times. Keith denied these requests and
2    continued his false accusations, threats, and intimidation against Plaintiff.

3         Keith told Plaintiff that he was no longer allowed to work with certain employees,
4    including Ms. Lorenz; to return to his office; or to work in certain capacities at PVSP,
5    including in his then-current capacity as SRN-II or as an acting SRN-III during Ms.
6    Griffith's absences. These restrictions precluded Plaintiff from carrying out virtually any
7    of this then-present duties. Keith did not give Plaintiff any alternative duties, and led
8    Plaintiff to believe that, because of these restrictions, he was constructively terminating
9    Plaintiff's employment.

10        After Plaintiff's fifth repeated request to be excused, Keith finally allowed him to
11   leave. Plaintiff immediately became physically ill and began to vomit and suffered a
12   panic attack as a result of the meeting. Keith's conduct caused Plaintiff to develop an
13   anxiety and panic disorder such that he was directed by his physician not to return to
14   PVSP until his condition improved (elevated blood-pressure and numbness in his
15   extremities).

16        Plaintiff went on medical leave immediately following this meeting and sought
17   workers' compensation benefits for stress injuries relating to Keith's conduct. When
18   Plaintiff was cleared to return to work on January 16, 2015, Defendants placed him on
19   an undesirable night shift.

20        Keith's June 2014 statements, his incitement of Ms. Lorenz's complaint, and the
21   conduct at the June 2014 close-door meeting came shortly after the IA Office's May
22   2014 determination that the allegations in the August 2012 Complaint could not be
23   sustained. This conduct was in retaliation for Plaintiff's participation in the IA Office's
24   investigation, Plaintiff's October 2012 and June 2014 complaints, and Plaintiff's receipt
25   of workers' compensation benefits.

26        **K.    Relief from Keith's Conduct**

27        Plaintiff sought relief from Keith's conduct in numerous ways, including through
28   the October 2012 EEO Complaint; by speaking to the IA Office during their investigation

of the August 2012 Complaint; by speaking to his direct supervisors, who also, in turn, spoke to the CEO of PVSP; and, in September 2012, by reporting to the Employee Relations Officer at PVSP, Heather Sanchez, and the CEO at the time, Anthony Lonigro, and to the EEO counselor at PVSP, Kent Nash, Keith's discriminatory denial of Plaintiff's leave requests and certain employment benefits.

On June 27, 2014, Plaintiff filed another complaint with CDCR's internal EEO office complaining of Keith's conduct during the June 2014 closed-door meeting.

On November 5, 2014, Plaintiff submitted a completed Government Claim Form to the California Victim Compensation and Government Claims Board ("the Claims Board"). The Claims Board formally rejected Plaintiff's complaint on December 23, 2014. FAC Exs. C-D.

On May 27, 2015, Plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") alleging "Discrimination, Harassment, Retaliation Demoted, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied employment, Denied or forced to transfer, Denied promotion, Denied reinstatement." He received a right-to-sue letter that same day. FAC Exs. A-B.

## IV.   **ARGUMENTS**

Defendants seek dismissal of the complaint on the following grounds: (1) the FEHA claims that occurred before May 26, 2014, are barred by the statute of limitations; (2) the claims in violation of public policy are barred by the Government Claims Act; (3) all of Plaintiff's claims that are subject to the Government Claims Act and occurred before May 5, 2014, are barred by the statute of limitations; (4) all of Plaintiff's non-statutory claims that occurred before June 13, 2013, are barred by the two-year statute of limitations; (5) Plaintiff's FEHA and Title VII claims against Keith must be dismissed; (6) Plaintiff's twelfth cause of action should be dismissed for failure to state a claim; (7) Plaintiff's negligent training and supervision claim is barred by the Government Claims Act; and (8) Plaintiff's request for punitive damages should be dismissed for failure to

state sufficient facts supporting this award.

Plaintiff opposes Defendants' motion. He argues that none of his claims are barred by the statute of limitations and that, to the extent they are, they are subject to equitable tolling and/or the "continuing violation" doctrine. He also argues that Defendant Keith should not be dismissed from any of the claims. However, he concedes that his ninth cause of action for negligent training and supervision was included mistakenly. Lastly, he argues that his request for punitive damages is not subject to absolute dismissal because those damages are not barred against Defendant Keith. Insofar as the Court finds deficiencies in the claims as asserted, Plaintiff seeks leave to cure by amending the complaint.

**V.   ANALYSIS**

**A.   Statute of Limitations**

**1.   FEHA Statute of Limitations**

Plaintiff asserts three FEHA claims against the Defendants: racial harassment, wrongful denial of promotion, and retaliation. Defendants move to dismiss those claims which are predicated on conduct occurring before May 26, 2014, as untimely.

"In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." Yurik v. Superior Court, 209 Cal. App. 3d 1116, 1121 (1989); accord Palmer v. Regents of Univ. of Cal., 107 Cal. App. 4th 899, 904 (2003) (under FEHA, exhaustion of administrative remedies is a "jurisdictional prerequisite to resort to the courts"); Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1724 (1994). Exhaustion in this context requires filing a written charge with DFEH within one year of the alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue. Romano v. Rockwell Int'l, Inc., 14 Cal.4th 479, 492 (1996); Rascon v. Diversified Maint. Sys., 2014 WL 1572554, at *5 (E.D. Cal. Apr. 17, 2014). The scope of the written administrative charge defines the permissible scope of the subsequent civil action. Yurik, 209 Cal. App. 3d at 1121-23.

1 Allegations in the civil complaint that fall outside the scope of the administrative charge
2 are barred for failure to exhaust.

3     Since Plaintiff filed a charge of discrimination with the DFEH on May 27, 2015,
4 Defendants argue that any claims based on conduct occurring before May 26, 2014—
5 that is, more than one year before that filing—are time-barred. Plaintiff counters that his
6 claims were equitably tolled while his internal employment discrimination and
7 harassment claims were being processed and that the complained-of conduct was part
8 of a continuous course of conduct.

9     Under the equitable tolling doctrine, a court is permitted to toll the statute of
10 limitations when a Plaintiff, "possessing several legal remedies, reasonably and in good
11 faith, pursues one designed to lessen the extent of his injuries or damage." Addison v.
12 State, 578 F.2d 941, 943 (1978); see also Butler v. Nat'l Cmty. Renaissance of
13 California, 2014 WL 4473959, at *10-11 (9th Cir. Sept. 12, 2014). A statute of limitations
14 may be tolled, in certain circumstances, while an aggrieved party diligently pursues his
15 claims in an alternative forum. See, e.g., McDonald v. Antelope Valley Cmty. College
16 Dist., 45 Cal. 4th 88, 110 (2008).

17     In Addison, the plaintiff, after her government tort claim was denied, filed a timely
18 complaint in federal court, alleging, inter alia, three state law claims. 21 Cal. 3d at 317.
19 After defendant moved to dismiss the federal action, plaintiff filed a state court complaint
20 alleged the same three claims. Id. at 316-17. The federal district court later dismissed
21 plaintiff's state law claims without prejudice. Id. at 317. Thereafter, the state court
22 dismissed the second complaint on the basis that the state complaint had not been filed
23 within the requisite period of limitations. Id. at 316. The California Supreme Court
24 reversed, holding that under the facts, the state statute of limitations was tolled during
25 the time the matter was pending in the federal court. See id. at 321 (holding that "by
26 reason of the federal suit, defendants were fully notified within the [ ] statutory period of
27 plaintiff's claims and their intent to litigate" and were "informed at all times of the nature
28 of plaintiffs' claims").

11

The Ninth Circuit has interpreted the state law announced in Addison, as follows: "Under California law, three conditions must be met to toll the statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." See Bacon v. City of Los Angeles, 843 F.2d 372 (9th Cir. 1988) (citing Addison, 21 Cal. 3d at 319).

"[E]quitable tolling[, however,] does not apply when a plaintiff has pursued a remedy as to only one of several distinct wrongs." Arnold v. United States, 816 F.2d 1306, 1312-13 (9th Cir. 1987) (holding that a plaintiff who had alleged employment discrimination in an administrative proceeding was not entitled to equitable tolling as to later state law claims for harassment by a supervisor because "these wrongs are different"). "As the courts have explained for years, the equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and later proceedings to make sure defendant received proper notice." Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1141 (9th Cir. 2001). "In this way, defendant is protected from stale claims. Once notified that a plaintiff seeks a remedy for a certain wrong, defendant can gather evidence, interview witnesses, and locate documents." Id. In this case, Plaintiff alleges three related, but different, FEHA claims: racial harassment, wrongful denial of promotion, and retaliation. Plaintiff asserts that all were included in the October 2012 EEO complaint. Two years and one month later, in November 2014, Plaintiff submitted a claim form with the Claims Board, again including these same FEHA claims plus others based on Keith's conduct after October 2012.

Plaintiff's pursuit of relief for these alleged wrongs in these alternate forums is sufficient to entitle him to equitable tolling. Both his October 2012 EEO Complaint and the November 2014 claim to the Claims Board included all three FEHA claims asserted here and put Defendants "of the action and [gave them] the opportunity to begin gathering their evidence and preparing their defense," foreclosing a prejudice argument. See Addison, 21 Cal. 3d at 319.

1    Defendants argue that Plaintiff's failure to reasonably pursue his EEO complaint

2    is clear from the fact that it is still pending, unresolved, over three years later. See

3    Acuna v. San Diego Gas & Electric Co., 217 Cal. App. 4th 1402, 1417 (June 19, 2013)

4    (the equitable tolling doctrine is inapplicable once the employee is on notice that her

5    alternate remedies will be unsuccessful). There is, however, nothing before the Court to

6    indicate Plaintiff should have known the internal complaint remedy was futile. The

7    amount of time it took the IA's Office to resolve the August 2012 complaint filed against

8    Plaintiff (2 years and 3 months) was justification for his concluding otherwise.

9    Furthermore, and contrary to Defendants' suggestion, Plaintiff did not sit idly by until

10   filing his May 2015 DFEH claim. In the interim, he submitted another internal EEO

11   complaint and then a November 2014 Claim Form with the Claims Board. The Court

12   thus finds that Plaintiff pursued his remedies through alternate forums diligently,

13   reasonably, and in good faith.

14       Defendants next argue that even if the Court finds an equitable tolling here, it

15   should apply only to FEHA claims asserted against the employer, and not to the FEHA

16   harassment claim against Keith.[4] In support, they rely on the California Supreme Court's

17   language in McDonald to the effect that "the limitations period is equitably tolled while

18   the *employee and employer* pursue resolution of any grievance through an internal

19   administrative procedure." 45 Cal. 4th at 108 (emphasis added). Moreover, Defendants

20   contend that nothing in McDonald suggests equitable tolling should be expanded to

21   include FEHA harassment claims against employees. The Court agrees that nothing in

22   McDonald so states. However, nothing in McDonald says the opposite. Absent some

23   authoritative basis for Defendants' proposed interpretation of McDonald -- Defendants

24   cite to none, and the Court is aware of none -- and given the Court's view that

25   Defendants' interpretation would contravene the intended purpose of the tolling doctrine

26   -- to provide an opportunity for investigation, gathering of evidence, and conciliation

27
---
28   [4] Although this issue is effectively mooted by the Court's dismissal, infra, of Plaintiff's FEHA retaliation
     and wrongful denial of promotion claims against Keith on other grounds, the Court will address
     Defendants' arguments.

1  before seeking judicial intervention -- the Court will not read <u>McDonald</u> to so limit the

2  reach of the equitable tolling doctrine.

3       Defendants also argue that equitable tolling should not apply because Plaintiff

4  conspicuously omitted the dates of Defendant Keith's alleged discriminatory conduct in

5  the May 2015 DFEH charge, thus failing to put Defendants on notice that Plaintiff was

6  and is pursuing FEHA claims from 2012. This argument ignores the fact that the

7  October 2012 EEO complaint put Defendants on notice of the earlier conduct and

8  Plaintiff's November 5, 2014, Government Claims Form set forth in considerable detail

9  the conduct underlying Plaintiff's FEHA claims.[5] <u>See</u> FAC Ex. C.

10      Lastly, Defendants argue that Plaintiff's failure to earlier raise claims premised on

11 Keith's July or August 2012 failure to promote and September 2012 unjustifiable

12 transfer demonstrates bad faith which should be grounds for precluding him from

13 asserting those claims here. But Plaintiff specifically alleges that his October 2012 EEO

14 Complaint referenced this conduct and thereby gave Defendants the opportunity to

15 fashion a remedy. <u>See</u> FAC ¶ 31 ("…Plaintiff attempted to exhaust his internal

16 administrative remedies with respect to events occurring prior to October 1, 2012 by

17 filing Plaintiff's October 2012 Internal Complaint based on Defendant Keith's …

18 *reassignment of Plaintiff to A Yard, his denial of Plaintiff the promotion to SRN-III, .…*")

19 emphasis added). This conduct was also referenced in Plaintiff's November 5, 2014,

20 Government Claims Form. <u>See</u> FAC Ex. C.

21      For the reasons set out above, Defendants' motion to dismiss Plaintiff's FEHA

22 claims based on the statute of limitations is denied.[6]

23              **2.    <u>Government Claims Act Statute of Limitations</u>**

24      Plaintiff also brings multiple non-statutory state law claims for money damages

25 against Defendants. These include Plaintiff's second (racial harassment in violation of

26

27 [5] It contains factual allegations substantially similar to those pled in this action.

28 [6] In light of this holding, the Court declines to reach Plaintiff's alternative argument that Keith's conduct was part of a continuing course of conduct.

1   public policy), fourth (wrongful denial of promotion in violation of public policy), sixth

2   (retaliation in violation of public policy), ninth (negligent training and supervision), tenth

3   (failure to prevent racial harassment, discrimination and retaliation), eleventh

4   (intentional infliction of emotional distress), and twelfth (breach of statutory employment

5   terms) claims. Defendants move to dismiss these as untimely.

6        Under California law, tort claims are generally subject to a two-year statute of

7   limitations. Cal. Civ. P. Code § 335.1. However, the statute of limitations for tort claims

8   asserted against a public entity or employee is shorter. California's Government Claims

9   Act ("CGCA") requires that a claim against a public entity or its employees for money or

10  damages be presented to the Claims Board no more than six months after the cause of

11  action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. "Timely claim

12  presentation is not merely a procedural requirement, but is ... a condition precedent to

13  plaintiff's maintaining an action against defendant and thus an element of the plaintiff's

14  cause of action." Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209 (2007) (citations

15  omitted); DiCampli–Mintz v. Cnty. of Santa Clara, 55 Cal. 4th 983, 990 (2012); State v.

16  Superior Court of Kings Cnty. (Bodde), 32 Cal. 4th 1234, 1239 (2004); Mabe v. San

17  Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001);

18  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Suit must

19  then be commenced not later than six months after the date the written notice was

20  deposited in the mail, Cal. Gov't Code § 945.6(a)(1) (quotation marks omitted); Clarke v.

21  Upton, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010); Baines Pickwick Ltd. v. City of Los

22  Angeles, 72 Cal. App. 4th 298, 303 (1999), and "[t]he deadline ... is a true statute of

23  limitations defining the time in which, after a claim presented to the government has

24  been rejected or deemed rejected, the plaintiff must file a complaint alleging a cause of

25  action based on the facts set out in the denied claim," Shirk, 42 Cal. 4th at 209 (citations

26  omitted).

27        Since Plaintiff submitted his claim to the Claims Board on November 5, 2014,

28  Defendant moves to dismiss any CGCA claims that are based on conduct occurring

1    over 6 months prior to that date – that is, any conduct predating May 5, 2014[7] – as

2    barred by the statute of limitations. Equitable tolling, however, also applies to the six-

3    month limitations period of the CGCA. Addison, 21 Cal. 3d at 321. As discussed supra,

4    Plaintiff filed his October 2012 EEO Complaint with the intent to pursue informal and

5    alternate remedies. As with Plaintiff's FEHA claims, equitable tolling would apply. By

6    "alleviating the fear of claim forfeiture, [equitable tolling] affords grievants the

7    opportunity to pursue informal remedies ... without compromising defendants' significant

8    'interest in being promptly apprised of claims against them in order that they may gather

9    and preserve evidence' because that notice interest is satisfied by the filing of the first

10   proceeding that gives rise to tolling." Id. (quoting Elkins v. Derby, 12 Cal. 3d 410, 417-18

11   (1974)) (citations omitted). Defendants' motion to dismiss on this ground is thus denied.

12                **3.    Personal Injury Statute of Limitations**

13        Alternatively, Defendants move to dismiss Plaintiff's non-statutory claims as

14   untimely under California's two-year statute of limitations for personal injury claims. Cal.

15   Civ. P. Code § 335.1. But "[i]f an action under California law is covered by the [CGCA],

16   the ordinary statutes of limitations are inapplicable, because the Act has its own

17   separate statute of limitations." Williams v. City of San Jose, 965 F.2d 1169, 1992 WL

18   4758, at *2 (9th Cir. 1992). Since all of Plaintiff's claims are asserted against a public

19   entity and/or public employee for money damages, they are governed by the CGCA,

20   and the 2-year statute of limitations does not apply.

21        **B.    Public Policy Claims**

22        Plaintiff brings three public policy claims against the Defendants: racial

23   harassment, wrongful denial of promotion, and retaliation. Defendants move for

24   dismissal of the latter two on the ground that there is no personal liability for

25   discrimination and retaliation in violation of public policy, and therefore there can be no

26   *respondeat superior* liability.

---

27   [7] Defendants' moving papers argue that claims that occurred before "May 5, 2015" are barred. The Court
28   assume that is a typographical error and should have read "May 5, *2014*," the date that is six months
     before Plaintiff's filing of his claim.

1   As the Court noted in its September 23, 2015, Order granting in part Defendants'

2   motion to dismiss Plaintiff's original complaint, California's statutory scheme of public

3   sector liability protects public entities from direct liability for damages arising from torts

4   except to the extent specifically provided by statute. In that Order, the Court held that

5   neither CDCR nor PVSP may be held directly liable for Keith's conduct. Remaining were

6   the related questions of whether Keith may be personally liable under the CGCA  and

7   whether CDCR or PVSP may be liable under a theory of *respondeat superior* for Keith's

8   conduct. Those questions are now before the Court. For the reasons set forth here,

9   Defendants' motion to dismiss will be granted on this ground.

10   The law is well-settled that claims of discrimination and retaliation may not be

11   asserted against employees. See Washington v. Lowe's HIW Inc., 75 F. Supp. 3d 1240

12   (N.D. Cal. Dec. 16, 2014). In Washington, the plaintiff was a former employee of Lowe's

13   retail store. She alleged that after she asked her employer why she did not receive a

14   pay increase, she was subjected to "rude and hostile treatment," a reduction in her

15   responsibilities, exclusion from team meetings with management, unfair accusations of

16   theft, and ultimately wrongful termination. She brought suit against several individual

17   Defendants asserting, inter alia, claims under FEHA for discrimination, sexual

18   harassment, retaliation, and wrongful termination in violation of public policy. On the

19   Defendants' motion, the District Court dismissed Plaintiff's FEHA and public policy

20   claims against the individual defendants pursuant to Reno v. Baird, 18 Cal. 4th 640, 643

21   (1998).

22   In Reno, the California Supreme Court held that "FEHA, like similar federal

23   statutes, allows persons to sue and hold liable their employers, but not individuals[, a]

24   conclusion that also applies to common law actions for wrongful discharge." The Court

25   explained that although FEHA prohibits harassment as well as discrimination, the latter

26   prohibition applies only to "an employer,"—not to employees, including those in

27   supervisory roles. 18 Cal. 4th. at 644-45. The Court distinguished the two by noting that

28   discrimination claims, but not harassment claims, could encompass "commonly

necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like." Id. at 646-47. "Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." Id. at 647. The Court concluded that, like cases interpreting FEHA's federal counterparts Title VII and the ADEA, "individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts," though they may be held liable for harassment. Id. at 644, 647-48.

The Court in Reno extended its holding to dismiss plaintiff's common law cause of action for discharge in violation of public policy. 18 Cal. 4th at 663-64. It noted that the "basis for that cause of action, and the public policy plaintiff cites, is the FEHA." Id. at 663. Because "[i]t would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric," the Court's holding that a plaintiff may not sue an individual supervisor under the FEHA also prohibited her from suing the supervisor individually for wrongful discharge in violation of public policy. Id. at 664.

In Jones v. Lodge at Torrey Pines Partnership, 42 Cal. 4th 1158, 1160 (2008), the California Supreme Court expressly extended Reno's holding to FEHA claims for retaliation; that is, only the employer, but not nonemployer individuals, may be held liable.

Turning to this case, Plaintiff asserts, against all Defendants, claims for wrongful denial of promotion and retaliation in violation of public policy. Since these claims cannot be brought against CDCR and/or PVSP directly, Plaintiff may only proceed against them if he is able to proceed against Keith. But since Reno and Jones foreclose such claims against Keith, Plaintiff is prohibited from proceeding against CDCR and/or PVSP on *respondeat superior* liability on them.

1    In his opposition, Plaintiff argues only that "Defendants do not provide any basis
2  for why Defendant Keith is not otherwise an 'employer' for the purpose of their analysis."
3  Since <u>Reno</u> specifically referenced supervisory personnel, such as Keith, when
4  discussing the limits of individual liability, Defendants had no burden to prove why Keith
5  is not an "employer". Indeed, Plaintiff himself states that he was employed by CDCR but
6  supervised by Keith. FAC ¶¶ 16, 18.

7    Plaintiff's wrongful denial of promotion and retaliation claims in violation of public
8  policy will therefore be dismissed against all Defendants.

9    **C.    Individual Liability for FEHA and Title VII Claims**

10    Defendants also move for dismissal of Plaintiff's FEHA and Title VII claims
11  against Defendant Keith. As discussed <u>supra</u>, Plaintiff is unable to proceed against
12  Keith on his FEHA denial of promotion and retaliation claims. <u>See</u> <u>Reno</u>, 18 Cal. 4th at
13  663-64; <u>Jones</u>, 42 Cal. 4th at 1160. As for his Title VII claims, the Ninth Circuit has
14  consistently held that non-employer individuals cannot be held personally liable under
15  that law. <u>See, e.g.</u>, <u>Holly D. v. California Institute of Technology</u>, 339 F.3d 1158, 1179
16  (9th Cir. 2003) (affirming the district court's grant of summary judgment in favor of an
17  individual defendant because "[w]e have consistently held that Title VII does not provide
18  a cause of action for damages against supervisors or fellow employees"); <u>Pink v. Modoc</u>
19  <u>Indian Health Project, Inc.</u>, 157 F.3d 1185, 1189 (9th Cir. 1998) ("[C]ivil liability for
20  employment discrimination does not extend to individual agents of the employer who
21  committed the violations, even if that agent is a supervisory employee."); <u>Miller v.</u>
22  <u>Maxwell's Intern. Inc.</u>, 991 F.2d 583, 587-88 (9th Cir. 1993) ("[I]ndividual defendants
23  cannot be held liable for damages under Title VII," even if those defendants were
24  supervisory personnel.) Plaintiff's sole argument is again that Defendants have not
25  shown why Keith is not an employer. As noted above, they have no such burden.
26  Accordingly, these claims are dismissed as against Keith.

27

28

### D.   Negligent Training and Supervision

Plaintiff's negligent training and supervision claim was dismissed in the Court's prior order. Plaintiff acknowledges that his inclusion of this claim in the FAC was a mistake. This claim is thus dismissed.

### E.   Breach of Statutory Employment Terms

In the twelfth cause of action, Plaintiff claims that Defendants are liable for "Breach of Statutory Employment Terms" because they allegedly violated CDCR policies and California Government Code § 19572. Plaintiff, however, fails to identify applicable CDCR policy provisions, and Section 19572 relates only to the various actions that can result in discipline of  employees. Neither creates a private cause of action. Accordingly, this claim is dismissed.

### F.   Punitive Damages

Finally, Defendants move for dismissal of Plaintiff's request for punitive damages against all Defendants. Plaintiff was previously informed that though punitive damages may be awarded in a private enforcement action under the FEHA, they are not recoverable from public entities. See State Personnel Bd. v. Fair Employment & Housing Comm., 39 Cal. 3d 422, 434 (1985); Runyon v. Superior Ct., 187 Cal. App. 3d 878, 881 (1986).

Defendants' also move to dismiss Plaintiff's claim for punitive damages from Keith on the grounds Plaintiff has not alleged facts sufficient to warrant such relief. Defendants provide no supporting authority or enlightening argument. They have not shown why Plaintiff's claims are insufficient to justify a fact finder in awarding such damages. This portion of their motion is therefore denied.

### G.   Leave to Amend

The court has carefully considered each of Plaintiff's claims and the grounds upon which Defendants have moved to dismiss them.  As to those claims which the Court dismissed, the Court also has carefully considered, and at least tentatively ruled out, the likelihood any could successfully be amended.  Accordingly, leave to amend will

be denied; but it will be denied without prejudice.  If Plaintiff concludes in good faith that it can hereafter identify and present **facts or law not previously presented** to justify allowing amendment notwithstanding the findings and conclusions herein, he may move for leave to seek further amendment.

## VI.   CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Defendants' motion to dismiss (ECF No. 24) is GRANTED IN PART and DENIED IN PART:

    a.  The following claims remain against Defendants CDCR and/or PVSP: harassment, wrongful denial of promotion, and retaliation in violation of FEHA; racial harassment in violation of public policy; racial discrimination and retaliation in violation of Title VII; failure to prevent racial harassment, discrimination, and retaliation; and IIED.

    b.  The following claims remain against Defendant Keith: harassment in violation of FEHA; harassment in violation of public policy; and IIED.

    c.  All other claims are dismissed without leave to amend; and

2.  Defendants shall file an answer to the First Amended Complaint within twenty-one (21) days from the date of this order.

IT IS SO ORDERED.

Dated:   February 12, 2016          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE